This is case number 4180080, People v. Brunner. For the appellant is Mr. Jonathan Krieger. You are here, sir? Is that pronounced correctly? And for the appellant is Ms. Linda McClain. Mr. Krieger, you may proceed, sir. Jonathan Krieger Good afternoon, your honors. May it please the court? My name is Jonathan Krieger and I'm here on behalf of David Brunner. The brief raises three issues. I wanted to focus on issue A1, the ineffective assistance of counsel for failing to file a motion to suppress statements. In that argument, we are requesting a remand for an evidentiary hearing, but due to the procedural errors outlined in argument 2 and 3, we would ask at minimum for a remand for further second stage proceedings. My client has made a substantial showing of ineffective assistance of counsel failing to file a suppression motion, a trial no one claimed to witness the murderer of Judy Skimmerhorn, the decedent in this case. Instead, the state's case was built upon two statements by my client given to the police, which were captured on videotape, and based on the trial testimony of Megan Riley. The video statements had a particular weight given the persuasive power that review and courts have found are given to defendant's statements. A pre-trial report by psychiatrist Terry Killian, however, cast doubt on the voluntariness of the statements. Killian outlined to my client severe cocaine dependence, his long history of cocaine use. He started using when he was 16 years old, and he reported to Killian that he had been clean essentially none of the 10 years except when he was in prison. The effect of his cocaine use was evident in the first statement, in the video of the first statement. My client admitted that he had been on a cocaine binge for the previous several days and had not slept at all. This was evident in his demeanor on the video. He was fidgety. He looked completely exhausted. Based on the video and my client's history, Killian found that my client was, quote, impaired to the extent it would have been difficult for him to knowingly and voluntarily make a statement to the police. Killian also found my client's mental state was at play in his second statement to the police. My client was diagnosed with major depression and treated for this and for suicide attempts throughout his life. He was admitted for these based on depression and attempts to harm himself five times from his teens until the year before his arrest when he was 32 years old. This, too, is evident in the video where he said, shortly before giving his inculpatory statement, I want to die. I want this to end. And he recalled trying to, quote, blow his heart out. Counsel, if the voluntariness of the first statement is in question, does that taint the second statement? Yes, Your Honor. Our position is that the second statement should be excluded on its own based on Dr. Killian's findings with regard to depression, but that it also should be suppressed as the fruit of the tainted first statement. And we outline, mostly in the reply, about the attenuation analysis in that. It's the same interrogator, the same detective did the questioning, was at the same place. And although there was a passage of about 40 hours between the two statements, we cited a few cases which have found that when the initial statement is involuntary as opposed to just a Miranda violation, that even the passage of a few days does not dissipate the taint. What about the fact that your client allegedly asked for the second meeting with the officers? Right. I would say that that would be relevant with regard to the second part of our first argument, the Miranda violation. But as I read Orkin v. Elstad, the case that we cited of attenuation from voluntariness cases as opposed to Miranda cases, Miranda warnings would not dissipate the taint. And so based on the second statement and his evident depression, both based on his long-standing depression and the specific depression from coming down from cocaine, Dr. Killian found his mental state, quote, certainly could have been influenced to some extent in his willingness to incriminate himself. The circuit court does err in dismissing the petition because my client has made a substantial showing of both unreasonable performance and resulting prejudice. From the defense counsel's perspective, there's no reason not to seek the suppression of the statements. They were perfectly consistent with the trial strategy of blaming Joey Bruner, saying that Joey Bruner was the person who, in fact, committed the murder of Judy Skirmerhorn, not my client. And the sentencing counsel said that Dr. Killian was perhaps the most respected psychiatrist in this community. But counsel said he did not call Dr. Killian because his report had allegedly called the second statement, knowing and volunteering. Now, this doesn't say anything about his first statement. And more importantly, no such finding was in the report that we have. As a result, counsel's, my client has made a substantial showing of unreasonable performance. He's also made a substantial showing in the next step in the Strickland analysis, which is the reasonable probability of success on the motion. The report provided solid, direct psychiatric reason to exclude the statements, both on their own, based on Dr. Killian's findings, but for the second statement, for two additional reasons, as I mentioned to Justice Turner, that the second statement should come out as the fruit of the involuntary first statement. And also, based on an allegation in one of my client's petitions, that he was coerced during a bathroom break, immediately before giving his ultimate statement, which was inculpatory, that he was coerced by threats made by the detective. He also made a substantial showing that suppression of the statements would have resulted in an acquittal. The first statement placed my client in the house. He admitted to taking something from the house. And he made what was unquestionably a false exculpatory statement. The second statement had more false exculpatory statements and, of course, included an admission that my client had strangled Judy Skimmerhard. Without the video statements, there would be no conviction. As the state argued in closing, the biggest thing you have to consider is David links David to the crime. His statements alone were sufficient to convict him. Given the substantial showing of ineffective assistance and a related showing of a Miranda violation in newly discovered evidence, we would ask that this court remand for an evidentiary hearing. Now, briefly, arguments two and arguments three are somewhat intertwined. Before my client lost his right to counsel, there were two pending motions. The first motion was my client's pro se motion to fire Dan Wright, who was his conviction counsel. The second motion was counsel Wright's motion to withdraw, because he didn't believe that there were any valid issues raised in my client's petition. Now, the court needed to resolve one of those properly, but did neither of them correctly. Resolved neither of them correctly. Under People v. Cooner, withdrawal of counsel should only be allowed to withdraw in, quote, extraordinary circumstances. That is because if a petition has gotten to second stage, it means that the circuit court has already found that there is, at the very least, the gist or an arguable basis for the claim. And so granting an attorney's motion to withdraw represents a reversal of that. So the court at that point could have granted or denied the motion, but either way it needed to have examined counsel's analysis of the pro se claims. It didn't in this case. The court just asked my client if he had any objection to counsel Wright leaving, and when he said he did, he granted the motion. The alternative, the court could have ruled on my client's motion to fire counsel Wright. But if he did that, if the court did that, it needed to have explained the consequences of giving up his right to counsel. The court could have told my client that post-conviction proceedings were his best shot for attacking his conviction at this point. The Post-Conviction Hearing Act has specific rules that attorneys would know about that a pro se defendant would not know about, that he would have no stand by counsel. And most importantly, that he would understand that he was not only giving up his right to representation by counsel Dan Wright, but that he was giving up his right to counsel entirely. He wasn't told of any of these consequences before he lost his right to counsel. So based on those procedural errors, we would ask this court remand for further second stage proceedings. But given our argument with regard to ineffective assistance of counsel, we would ask that the court reverse the circuit court's judgment and remand for an effective hearing. Thank you, counsel. Ms. McClain? May it please the court, counsel? Go ahead, sir. You have to be sure to speak up, please. The trial court in this case properly dismissed defendant's post-conviction petition on the state's motion. Defendant did not make a substantial showing that counsel's performance was deficient and that the deficient performance prejudiced him. In this case, whether to file a motion to suppress based on Dr. Killian's report was a matter of trial strategy, which defense counsel exercised. Defense counsel was the one who requested the examination by Dr. Killian for multiple purposes, including his capacity to wake Miranda, his interrogative suggestibility and mitigation, fitness to stand trial, and criminal responsibility. Defense counsel stated on the record that he was considering calling Dr. Killian as a witness. Defense counsel then stated at sentencing the reason why he had not called him. He stated that in the first interview, defendant did not have the capacity, given his condition, to make a knowing and voluntary statement, but that he did during the second interview. In this case, Dr. Killian came to the conclusion that defendant was impaired to the extent it would have been difficult for him to knowingly and voluntarily make a statement to the police during the first interview. However, during that first interview, they did not discuss the subject of Judy's murder. They discussed credit cards use, and they also discussed the car accident, which involved Judy's car. So they did not even get to the subject of Judy's murder. And so I think that counsel probably found that it was probably going to be a waste of time to attack that statement, and it was his trial strategy to not go after that statement. And as far as the second statement, Dr. Killian came to the conclusion, he did not come to the conclusion that the statements were involuntary. He said that defendant's thought process was much less impaired, that defendant had significant improvement in mental status, and that there was no evidence of psychosis or confusion. This statement was a full two days later. So that was defense counsel's did not have grounds based on Dr. Killian's statement to go after the second interview. And the state is also arguing that the statement, which was two days later, was attenuated from the first statement. So the fruit of the poisonous tree does not apply. You heard Mr. Krieger's argument about People v. Keener and how he asserts that post-conviction counsel making a motion to withdraw did not comply with what Supreme Court requires of counsel at second stage proceedings to do. What about that? I think my opposing counsel made two arguments. One was that the court did not evaluate the motion to withdraw properly. And my argument in response to that is that the court did say that counsel had done his job. And the court did not go through each last one of counsel's prongs in his motion to withdraw. But the court did find that counsel had done his job, and that was... Well, I understand the court. Keener was a relatively new decision back at that time. But Keener seems to require that for a petition that has been advanced to the second stage, which is here because the trial court appointed counsel, that the counsel in motion to withdraw must provide some information that is not apparent on the face of the petition demonstrating that each of the defendant's pro se claims was in fact frivolous and patently without merit. Essentially, this calls for something beyond what was before the trial court at the time the trial court advanced the petition to the second stage. What did post-conviction counsel do to comply with the Keener requirement? I think my opposing counsel makes three arguments under that. And the first one is that the defendant alleges that counsel appointed post-conviction counsel should have changed the allegation regarding Dr. Killian's testimony to delete a phrase. No, no. I may not be clear here. The question isn't just what counsel should have done, but the Supreme Court seems to be saying in Keener that the counsel at second stage moving to withdraw must bring to the trial court's attention information that was not apparent on the face of the pro se petition at the time the trial court advanced it from the first to second stage. Facts. Okay. So, leaving aside the argument of what trial counsel didn't do, how did post-conviction counsel in moving to withdraw comply with the Keener requirement? What facts did the post-conviction counsel call to the attention of the court to in effect say, here's why, judge, you shouldn't have even advanced this petition to the second stage? That's in effect what the court is saying. Supreme Court in Keener said this is really what this is about. I think post-conviction counsel went through meticulously, went through the post-conviction pro se petition and addressed everything. And the only thing that he did not provide the court with was the Shannon Childers affidavit. And the Megan Wanless affidavit. Did he provide the court with any facts which demonstrated that the petition was not soundly based, that were not present before the court when it advanced the petition to the second stage? I think he did to the best of his ability. He couldn't locate Megan Wanless. Well, that's not a question for the best of his ability. The first question is, did he provide the court with any specific facts? I think he did. What were they? He went through every last issue and pointed out things to the court that were not apparent from the pro se petition  I'm pretty sure he, like for the first issue with the Killian's forensic interview of defendants, post-conviction counsel would have gone through that and pointed out the fact that he did not come to the same conclusions the defendant did. Like, you know, that the statement was, you know, I know what you're talking, you're asking me to what the post-conviction counsel did. And I think that if you look at the defendant's pro se document, you look at the post-conviction counsel's document, they're diametrically opposed. Post-conviction counsel pointed out things that weren't in the petition. And he came up with an argument to show the court why each point made by the defendant was not meritable. But the problem is the trial court, in advancing the petition, found that it stayed the gist of a constitutional claim. And so when post-conviction counsel came along and disputed that, it was delving into something that had already been decided by the trial court. So unless post-conviction counsel could show that, look, judge, this is something you missed in terms of why you advanced this, you don't get a do-over. It's as if post-conviction counsel was saying, I want you to reconsider the fact that you advanced this, and here's why. Is there anything of that nature? For example, defendant is arguing that post-conviction counsel did not read his pleading where he states that Megan Riley's letters do not contain allegations of any direct perjured statement. Post-conviction counsel replied to that and stated that petitioner did not provide specific statements given by Ms. Wallens that were false of these or not corrected or addressed at trial. So defendant would make one statement, and post-conviction counsel would say, that's not really true. There weren't any perjured statements. I mean, if you just correct yourself, like Megan Riley corrected herself at trial and said, defendant might have said, that's not really perjury. So like, that's an example. Defendant said, Megan perjured herself. Opponent counsel would say, no she didn't. There wasn't true perjury where she corrected herself at trial, and that's not, she might have said, I can't believe he did it. Being equivocal at trial and uncertain in the letter is not perjury. That's what defendant's point of counsel pointed out. For the Megan Wallens, appointing counsel tried to locate Megan Wallens, went to her last address, could not find her to supplement the post-conviction petition. So there was no argument there. Defendant's making a baseless point in his post-safe petition, but post-conviction points it out in his response. There's motion to withdraw. Also, counsel filed a 651 certificate, and that has not been rebutted. So the state would be arguing that he did fulfill his duties in this case. Are there any other questions? I see none. I do have a question. What about the appointment of counsel issue, the issue about counsel being allowed to withdraw, and then the defendant being basically required to proceed pro se? Yeah, he was allowed to withdraw based on the motion to withdraw, and then he doesn't have a right to another counsel. Was the defendant informed of what he would be giving up in having no objection to post-conviction counsel withdrawing? Was he advised prior to that that he would not be entitled to a different attorney? He was not. They were not required to do that because they acted on the motion to withdraw first. It was a matter of court discretion which motion to address. He could have addressed the motion opposing counsel's motion to withdraw, or he could have addressed the motion to proceed pro se by defendant or from a different counsel, and the court chose to address the motion to withdraw, and so the other motion was moved. So it's your position that the court is not required to inform the defendant about what he would be giving up by agreeing to the motion to withdraw? I think it was irrelevant that he agreed to the motion to withdraw, but the court acted on the motion to withdraw, so it did not have to act on the defendant's motion for a new counsel or to proceed pro se. But my question is, is there any obligation on the trial court to advise the defendant that if you agree to this motion to withdraw, that you will not be entitled to the appointment of a different counsel? No, I did not find any cases saying that if the defendant agrees to a motion to withdraw, that they're required to admonish him on the rights he's giving up. Thank you, counsel. Mr. Krieger, any rebuttal, sir? Okay, thank you very much. The court will take this matter under advisement and recess for a few moments.